[Cite as *State v. Stopar*, 2012-Ohio-2177.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 25828 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALAN L. STOPAR | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 04 06 2037 |

DECISION AND JOURNAL ENTRY

Dated: May 16, 2012

---

CARR, Judge.

{¶1}  Appellant, Alan Stopar, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}  On June 25, 2004, the Summit County Grand Jury indicted Stopar on five counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree; seven counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree; one count of illegal use of a minor in nudity-oriented material or performance in violation R.C. 2907.323(A)(1), a felony of the second degree; and one count of disseminating material harmful to juveniles in violation of R.C. 2907.31(A)(1), a felony of the fourth degree.  Subsequently, the State moved to dismiss two of the rape charges and Stopar pleaded guilty to the remaining counts in the indictment.  Stopar was sentenced to ten years to life imprisonment on each count of rape; a three-year prison term on each  count of gross sexual imposition; a three-year prison term on

the count of illegal use of a minor in nudity-oriented material or performance; and a one-year prison term on the count of disseminating material harmful to minors. The sentences were ordered to run concurrently. Stopar was also classified as a sexual predator. The trial court's sentencing entry was journalized on November 10, 2004.

{¶3} On December 17, 2009, Stopar filed a notice of delayed appeal. On May 13, 2010, this Court issued a journal entry indicating that our review of the sentencing entry revealed that the trial court had failed to adequately impose post-release control. This Court vacated the judgment of conviction as void and remanded the matter for resentencing.

{¶4} On June 3, 2010, Stopar filed a motion to withdraw his plea in the trial court. The State filed a memorandum in opposition on June 14, 2010. The trial court held a hearing on the motion on August 9, 2010.

{¶5} On October 25, 2010, the trial court held another hearing at which time it denied the motion and resentenced Stopar. The trial court imposed the same total prison sentence, and also imposed a mandatory five-year term of post-release control. On November 12, 2010, Stopar filed a notice of appeal. This Court dismissed the appeal on the basis that the sentencing entry did not comport with Crim.R. 32(C). The trial court issued a new sentencing entry on January 27, 2011.

{¶6} Stopar again filed a notice of appeal on February 23, 2011. On appeal, he raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

{¶7} In his sole assignment of error, Stopar argues that the trial court erred by denying his motion to withdraw his plea. This Court disagrees.

{¶8} The withdrawal of a plea is governed by Crim.R. 32.1, which states:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶9} This Court has held that "[a] criminal defendant may withdraw his guilty plea prior to sentencing if the criminal defendant has presented a legitimate and reasonable basis for the withdrawal of the guilty plea." *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, ¶ 20. While an appellate court reviews a trial court's decision to grant or deny a criminal defendant's motion to withdraw his guilty plea for an abuse of discretion, this Court has asserted that "[w]hen a motion to withdraw a guilty plea is made before sentencing, it is to be freely allowed and treated with liberality." *State v. Eklich*, 9th Dist. No. 2279-M, 1994 WL 286279 (June 29, 1994). *See also State v. Xie*, 62 Ohio St.3d 521, 527 (1992).

{¶10} An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). This Court has previously held that a trial court does not abuse its discretion by denying a pre-sentence motion to withdraw a guilty plea when the following three elements are present:

> (1) the defendant is represented by competent counsel; (2) the trial court provides the defendant with a full hearing before entering the guilty plea; and (3) the trial court provides the defendant with a full hearing on the motion to withdraw the guilty plea, where the court considers the defendant's arguments in support of his motion to withdraw the guilty plea.

*West* at ¶ 22, quoting *State v. Pamer*, 9th Dist. No. 04CA0027-M, 2004-Ohio-7190, ¶ 10. Furthermore, this Court has required that a trial court's decision regarding a pre-sentence motion

to withdraw a guilty plea also take into consideration the facts and circumstances which are specific to each case. *West* at ¶ 23. In reviewing the trial court's decision, this Court must consider those same facts and circumstances. *Id.*

{¶11} In *State v. Wheeland*, 9th Dist. No. 06CA0034-M, 2007-Ohio-1213, ¶ 12, this Court recognized several additional factors which may be relevant to the inquiry of whether the trial court properly ruled on a motion to withdraw a guilty plea. Those factors included:

> 1) whether the state will be prejudiced by withdrawal; 2) the representation afforded to the defendant by counsel; 3) the extent of the Crim.R. 11 plea hearing; 4) the extent of the hearing on the motion to withdraw; 5) whether the trial court gave full and fair consideration to the motion; 6) whether the timing of the motion was reasonable; 7) the reasons for the motion; 8) whether the defendant understood the nature of the charges and potential sentences; and 9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Fulk*, 3d Dist. No. 15-04-17, 2005-Ohio-2506, ¶ 13, quoting *State v. Lewis*, 3d Dist. No. 1-02-10, 2002-Ohio-3950, ¶ 11.

*Wheeland* at ¶ 12.

{¶12} In support of his assignment of error, Stopar contends that he should have been able to withdraw his plea due to the fact that he misunderstood the nature of the plea colloquy. Stopar claims the confusion stemmed from misleading advice by defense counsel. Stopar further argues that none of the aforementioned factors supported the trial court's decision to deny his motion to withdraw. Stopar also emphasizes that because his motion was a pre-sentence motion, it should have been freely and liberally granted.

{¶13} After this Court issued a journal entry on May 13, 2010, vacating his original sentence, Stopar filed a pro se motion to withdraw his plea in the trial court on June 3, 2010. The trial court appointed counsel to represent Stopar and a hearing on the matter was held on August 9, 2010. Stopar was the only witness to testify at the hearing. Stopar testified that, on November 8, 2004, he arrived at the court house with the understanding that jury selection for his

trial would begin that day. Prior to the commencement of proceedings, defense counsel had a conversation with the prosecutor and then told Stopar that he was facing life in prison and that he should accept the State's offer of a ten-year prison sentence. Stopar testified that he rejected the offer. After another conversation with the prosecutor, defense counsel informed Stopar that the State had offered a five-year prison term in exchange for his guilty pleas. Stopar testified that he rejected this offer as well. After yet another conversation with the prosecutor, Stopar testified that defense counsel told him that the State's "last offer" was that he "do three years out of a five-year sentence[.]" Stopar testified that after a conversation with his wife, he decided to accept the offer. Stopar testified that there were no written documents involved in the plea bargaining process, with the exception of a sexual offender registration form. Stopar indicated that even if such documents had been presented to him, he would not have been able to comprehend them because he cannot read or write.

{¶14} When asked if the judge informed him of his rights prior to accepting his pleas, Stopar answered, "No *** at least not to my knowledge he didn't." Stopar further testified that "[e]verything was pretty foggy then[.]" Stopar testified that he did not have time to go over the details of the plea bargain because defense counsel told him to "keep [his] mouth shut" or else the plea deal would "be gone." Stopar concluded that it was "ridiculous" to think he would have agreed to a life sentence.

{¶15} On cross-examination, Stopar testified that he was not familiar with the contents of his pro se motion to withdraw his plea that he filed because someone had drafted it for him. When asked if there was anything wrong with his hearing, Stopar indicated that he was "partially deaf" but that he could hear the prosecutor's questions. Upon being asked if he remembered the female prosecutor, Jennie Shuki, who represented the State at the plea hearing, Stopar answered,

"No, it was a man." The following exchange occurred when the prosecutor asked Stopar if he remembered what had been discussed at the 2004 plea hearing:

A.   Actually, I don't remember any woman saying anything.

Q.   You don't remember anybody saying anything?

A.   No, I don't, sir.

Q.   Do you remember Judge Murphy saying anything?

A.   He told me good luck and three years.

Q.   He told you good luck and three years?

A.   Yes.

Q.   So you don't remember Judge Murphy sentencing you to life in prison with parole eligibility after ten years?

A.   No, that's -- that wasn't what was agreed upon.

Q.   I'm not asking you if it was agreed upon. I'm asking you if you remember Judge Murphy saying that?

A.   No, I don't, sir.

Q.   You don't? And you don't remember Judge Murphy going through each and every charge of rape, that you raped K.N. when she was 10; you raped her when she was 11[.]

A.   No, sir, he didn't.

Q.   -- and you raped her when she was 12? You don't remember that either?

A.   No, he didn't.

Q.   He didn't? Okay. And you don't remember him going through each and every gross sexual imposition charge?

A.   No, he didn't.

Q.   He didn't do that?

A.   No, he didn't.

Q.   Okay. And you don't remember him reading -- telling you your rights: You have the right to trial by jury; you have the right to have the State

prove you guilty beyond a reasonable doubt; you have the right to force or compel witnesses to testify on your behalf; you have the right not to be compelled to testify against yourself?

A. I never heard such words.

{¶16} After this exchange, portions of the transcript from the plea hearing were quoted to Stopar and he was asked if he remembered answering the judge's questions. Stopar replied that his attorney had instructed him on how to answer the questions. Stopar further testified that he had been told by defense counsel that the rape charges had been dropped. When asked what he thought he had been charged with, Stopar replied, "Actually, I don't know what I was charged with." Stopar testified that he did not speak out at the hearing because he was told not to do so. When asked if he was told he would receive a five-year sentence, Stopar responded, "No, [the judge] said good luck and three years." Stopar was then asked if he thought everything in the transcript was "a lie." In response, Stopar testified, "Everything in the transcript I did not hear. I have documents from the sentencing board in the institution that has the three years on it." Stopar further testified that he could not produce the documents because his wife had them at home. Stopar testified that he did not know he had been given a life sentence until after he had been in prison for three years. Stopar maintained that he rejected the offer of a life sentence with parole eligibility after ten years and that he entered his guilty plea with the understanding that he would serve "three years flat[.]" When asked if he understood that according to the transcript, he had pled guilty to three counts of rape, Stopar answered, "No, I did not. I did not."

{¶17} On redirect examination, Stopar testified that he had been diagnosed with a hearing problem and that there were "medical records in the institution." When asked how long he was before the judge for his plea hearing, Stopar stated, "I came in, stood by the thing, some words were said, and it was over. And he turned around and told the officer to take me into

custody." Stopar testified that he had trouble hearing the judge at the plea hearing. Stopar stated that he has "a hard time comprehending things" and that he took special education classes as a child. Stopar further testified that the attorney who represented him at the plea hearing had a conflict of interest. When asked to elaborate, Stopar stated that while he could not "prove it," his attorney had previously represented the father of one of the alleged victims. Stopar indicated that he learned this information during a conversation with his wife's friend. Stopar further testified that defense counsel subsequently represented one of the alleged victims. Stopar emphasized that he did not understand the nature of the plea hearing and that he relied on his attorney who instructed him to not say anything.

{¶18} On re-cross examination, Stopar was asked if he had any "papers or documents" in support of his claims to show the judge. Stopar responded, "I didn't think I needed them."

{¶19} A review of the transcript from the 2004 plea hearing reveals that the State was, in fact, represented by Attorney Shuki. Attorney Shuki explained that two counts of rape had been dismissed and that Stopar had agreed to plead guilty to the remaining counts in the indictment. Stopar's attorney stated on the record that he explained to Stopar that he would be "given a life term and that he will be eligible for parole after 10 years." Defense counsel further stated that Stopar had been informed that he would be classified as a sexual predator and would have a lifetime reporting requirement. The trial judge then informed Stopar on the record of all of the charges pending against him and the possible punishments, including that he was charged with three counts of rape, each of which carried a lifetime prison sentence with parole eligibility after ten years. When asked if he understood the nature of each charge, Stopar repeatedly stated, "Yes, sir." The trial judge emphasized that while Stopar would be eligible for parole after ten years, it would not necessarily be granted. The trial judge further addressed each of the

constitutional rights Stopar would be waiving by pleading guilty. Prior to asking for Stopar's plea on each count, the trial judge asked Stopar if he had "any questions [] about anything?" Stopar responded, "No, sir." Stopar then entered a guilty plea to each of the counts in the indictment, other than the two counts of rape which were dismissed. Prior to sentencing Stopar, the trial judge inquired as to whether Stopar had anything to say prior to the pronouncement of sentence. Stopar again declined. The trial court then sentenced Stopar on each count, including the imposition of a life sentence on each count of rape.

{¶20} In this case, the trial court did not abuse its discretion in denying Stopar's motion to withdraw his plea. The record simply does not support Stopar's claim that the trial judge merely stated, "good luck and three years," and did not discuss the nature of the charges against him. On November 8, 2004, the trial court held a complete plea colloquy where Stopar was represented by counsel. Stopar was also afforded a full hearing on his motion to withdraw his plea where he was represented by counsel. Contrary to Stopar's testimony at the hearing on the motion to withdraw, the trial judge at the plea colloquy discussed each charge in the indictment as well as the potential sentences. The trial judge specifically noted that Stopar was charged with three counts of rape which carried life sentences with parole eligibility after ten years. Defense counsel also stated on the record that he informed Stopar that "he'll be given a life term." Stopar's assertion that the trial judge never informed him of the constitutional rights he would be waiving is also unsupported by the record. The judge specifically informed Stopar that, by entering guilty pleas to the counts in the indictment, he would be waiving his right to a jury trial, the right to have the State prove his guilt beyond a reasonable doubt, the right to confront the witnesses against him, the right to compel witnesses to testify on his behalf, and the privilege against self-incrimination. Moreover, Stopar did not present any corroborating

evidence in support of his testimony that he had been diagnosed with a hearing issue, that he received paperwork indicating he would only serve a three-year sentence, or that defense counsel had a conflict of interest. A review of the transcripts from both the plea hearing as well as the hearing on the motion to withdraw his plea suggests that Stopar heard and comprehended the questions directed toward him, and had no trouble providing substantive responses. As Stopar did not present a legitimate and reasonable basis for the withdrawal of his guilty plea, the trial court did not abuse its discretion in denying his motion. *See West* at ¶ 20.

**{¶21}** The assignment of error is overruled.

**{¶22}** We further note that the State argues in its merit brief that the trial court did not have the authority to classify Stopar as a Tier III sexual offender. The Supreme Court of Ohio has held that applying the current registration requirements set forth in R.C. Chapter 2950, 2007 Am.Sub. S.B. No. 10. (also known as the "Adam Walsh Act"), to defendants who committed sex offenses prior to its enactment violates the Retroactivity Clause in Section 28, Article II of the Ohio Constitution. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 22-23. Stopar was classified as a sexual predator in 2004, prior to the enactment of the Adam Walsh Act in 2007. As the trial court did not have authority to re-classify Stopar as a Tier III sexual offender, his original classification as a sexual predator remains in place. Thus, Stopar's reclassification as a Tier III sexual offender is hereby vacated.

### III.

**{¶23}** Stopar's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is vacated to the extent that it reclassified Stopar as a Tier III sexual offender and his original classification remains in effect. The remainder of the judgment is affirmed.

Judgment affirmed, in part,
and vacated, in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
BELFANCE, J.
CONCUR.


APPEARANCES:

THOMAS M. DICAUDO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.