[Cite as *State v. Baker*, 2016-Ohio-8026.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 27937 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JUSTIN D. BAKER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2014-05-1242A |

DECISION AND JOURNAL ENTRY

Dated: December 7, 2016

HENSAL, Judge.

{¶1} Defendant-Appellant, Justin Baker, appeals from the judgment of the Summit County Court of Common Pleas, denying his presentence motion to withdraw his plea. This Court affirms.

I.

{¶2} A grand jury indicted Mr. Baker on (1) one count of the illegal manufacturing of methamphetamine within the vicinity of a school; (2) one count of the illegal assembly or possession of chemicals to manufacture methamphetamine; (3) two counts of aggravated possession; (4) two counts of the illegal use or possession of drug paraphernalia; and (5) one count of driving under financial suspension or cancellation. Mr. Baker initially pleaded not guilty to all seven charges, and the matter was set for trial. Several days before the scheduled trial date, Mr. Baker pleaded guilty to reduced charges. Specifically, he agreed to plead guilty to one count of the illegal manufacturing of methamphetamine and two counts of aggravated

possession. In exchange for his plea, the State amended the illegal manufacturing count to exclude that it occurred within the vicinity of a school and dismissed the remaining counts.

{¶3} After the trial court accepted Mr. Baker's plea, Mr. Baker retained new counsel. The day before his scheduled sentencing hearing, he filed a motion to withdraw his plea. At Mr. Baker's request, the court held a hearing on his motion. Following a full evidentiary hearing, Mr. Baker filed a supplement to his motion, and the State filed a brief in opposition to Mr. Baker's motion. The trial court then denied Mr. Baker's motion and proceeded to sentencing. The court sentenced Mr. Baker to serve a total of three years in prison.

{¶4} Mr. Baker now appeals from the court's denial of his motion to withdraw his plea and raises one assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEAS.

{¶5} In his assignment of error, Mr. Baker argues that the trial court erred when it denied his presentence motion to withdraw his plea. He argues that he was entitled to relief because he showed that his plea was coerced and that the attorney who originally represented him acted incompetently. We disagree.

{¶6} Criminal Rule 32.1 allows a defendant to seek the withdrawal of his or her plea either before or after sentence is imposed. If the motion is made before sentencing, it "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). Even so, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *Id.* at paragraph one of the syllabus. The trial court must hold a hearing on the defendant's motion and "determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.*

"A motion made pursuant to [Criminal Rule] 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph two of the syllabus.

{¶7} This Court will review a trial court's ruling on a presentence motion to withdraw under an abuse of discretion standard of review. *See State v. Lopez*, 9th Dist. Lorain No. 10CA009771, 2014-Ohio-5089, ¶ 7. We have recognized that,

> where the trial court considers "the facts and circumstances of [the] case[,]" it typically does not abuse its discretion in denying a motion to withdraw a guilty plea when the following elements are present:
>
> "(1) the defendant is represented by competent counsel; (2) the trial court provides the defendant with a full hearing before entering the guilty plea; and (3) the trial court provides the defendant with a full hearing on the motion to withdraw the guilty plea, where the court considers the defendant's arguments in support of his motion to withdraw the guilty plea."

(Alterations sic.) *State v. Jeffery*, 9th Dist. Summit No. 26639, 2013-Ohio-2985, ¶ 7, quoting *State v. Robertson*, 9th Dist. Medina No. 10CA0030-M, 2011-Ohio-4300, ¶ 6. This Court also has "recognized several additional factors which may be relevant to the inquiry of whether the trial court properly ruled on a motion to withdraw a guilty plea." *State v. Stopar*, 9th Dist. Summit No. 25828, 2012-Ohio-2177, ¶ 11 citing *State v. Wheeland*, 9th Dist. Medina No. 06CA0034-M, 2007-Ohio-1213, ¶ 12. Those factors are

> 1) whether the state will be prejudiced by withdrawal; 2) the representation afforded to the defendant by counsel; 3) the extent of the [Criminal Rule] 11 plea hearing; 4) the extent of the hearing on the motion to withdraw; 5) whether the trial court gave full and fair consideration to the motion; 6) whether the timing of the motion was reasonable; 7) the reasons for the motion; 8) whether the defendant understood the nature of the charges and potential sentences; and 9) whether the accused was perhaps not guilty or had a complete defense to the charge.

(Internal quotations and citations omitted.) *Wheeland* at ¶ 12. The defendant bears the burden of demonstrating that he has a "reasonable and legitimate basis for withdrawing [his or her] plea." (Internal quotations and citation omitted.) *State v. Jones*, 9th Dist. Wayne No. 12CA0024, 2012-Ohio-6150, ¶ 37.

{¶8} Mr. Baker does not dispute that he received a full hearing before entering his guilty plea. *See Robertson* at ¶ 6. Indeed, because the record does not contain a transcript of his plea hearing, we must presume regularity with regard to that proceeding. *See Cuyahoga Falls v. Doskocil*, 9th Dist. Summit No. 26553, 2013-Ohio-2074, ¶ 16. He also does not dispute that the court held a full evidentiary hearing on his motion to withdraw his plea. *See Robertson* at ¶ 6. Mr. Baker was present at that hearing with counsel, and the court listened to his testimony, as well as the testimony of his former counsel and a police officer who testified for the State.

{¶9} The crux of Mr. Baker's argument is that he entered his plea without the benefit of competent counsel. *See id.* According to Mr. Baker, his former counsel failed to keep him apprised of the evidence or the possibility that his co-defendant might testify against him. He avers that his former counsel waited until the eve of trial to arrange a meeting with the State and inform him that, absent a plea, he would likely be convicted and sentenced to a significant prison term. He argues that he felt compelled to accept the State's plea offer once his former counsel "gave up on him and the case." Additionally, he argues that his former counsel was incompetent because he never filed a motion to suppress.

{¶10} "A plea will not be considered voluntary if it is the result of ineffective assistance of counsel." *State v. Spears*, 9th Dist. Medina No. 07CA0036-M, 2008-Ohio-4045, ¶ 9. The two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies when a defendant who seeks to withdraw his plea claims that his counsel was incompetent. *Xie*, 62 Ohio

St.3d at 524. The defendant must show that (1) "counsel's performance was deficient," and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty * * *." (Internal citations and quotations omitted.) *Id.* There is a strong presumption that licensed attorneys in Ohio are competent. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985).

{¶11} At the hearing on his motion to withdraw his plea, Mr. Baker testified that he was innocent of the charges against him and that his former attorney was aware that he wanted to take his case to trial. According to Mr. Baker, he met with his former attorney several times leading up to his scheduled trial date, but his former attorney never explained the evidence against him. He testified that, at one point, the two discussed a plea offer, but Mr. Baker rejected the offer in favor of trial.

{¶12} Mr. Baker stated that, the Friday before his Monday trial date, his former attorney called him in the afternoon and told him come to the courthouse. He testified that his former attorney did not say why they were meeting, but, when he arrived, the prosecutor and two police officers were present. According to Mr. Baker, the prosecutor, the two officers, and his former attorney kept him in a room for three hours in an attempt to convince him to accept a new plea offer that the State had made. He denied that he was able to speak privately with his former attorney before the meeting. He estimated that the two talked alone for about 20 to 30 minutes over the course of the three hours that the meeting spanned. He testified that he was crying during the meeting and did not want to accept the plea because it was a less favorable than the State's original offer and he knew he was innocent.

{¶13} It was Mr. Baker's position that he was innocent of the charges against him because he was absent from his home for a period of time before the police searched it. He testified that the police arrested him the day before their search. He was still in jail when the

police went to his house, searched it, and found an active methamphetamine lab inside. Mr. Baker testified that the police told him the lab was smoldering when they found it. He, therefore, argued that another individual, likely his co-defendant, was responsible for the lab. Mr. Baker insisted that his alibi (i.e., the fact that he had been in jail) would have prevented the State from proving his guilt beyond a reasonable doubt at trial.

{¶14} Despite his professed innocence, Mr. Baker testified that he eventually felt that he had no option but to take the State's plea offer because his former attorney kept telling him that "this is as good as it's gonna get[.]" He stated that, before that point, he understood that his co-defendant had not implicated him and that he could prevail on his alibi at trial. During the discussion at the courthouse, however, he learned that his co-defendant would be testifying against him. He testified that his former attorney made him feel that he would not prevail if the matter went to trial. According to Mr. Baker, the group presented him with three options: (1) take the plea that day; (2) take a less favorable plea after that day, but before the start of trial; or (3) go to trial and, if convicted, receive a lengthy sentence. Mr. Baker claimed that his former attorney told him that "all the charges would be run wild and that [he] would have mandatory time on them" if he lost.

{¶15} Mr. Baker's plea hearing occurred the same day that he met with his former attorney, the prosecutor, and the two police officers. Mr. Baker admitted that, during the plea colloquy, the court asked him whether anyone had threatened or forced him to enter into his plea, and he responded no. He admitted that, when asked whether he was satisfied with the advice his former attorney had given him, he said that he was. Further, he admitted that, when the court asked him whether he had any questions, he indicated that he did not. The court questioned Mr.

Baker directly at the evidentiary hearing on his motion to withdraw, and the following exchange took place:

> THE COURT:  [] I didn't rush you, did I?
>
> [MR. BAKER]:  No, you did not.
>
> THE COURT:  So when I asked you, * * * you know, I do remember you crying and, you know, I gave you a tissue and I said "Do you want to proceed," and you said, "Yes," and I said, "Are you satisfied with [your attorney]," because I knew this case had been going on for nine months, and I knew that every time [your former attorney] would talk to the Court – to myself and the prosecutor he would say that you believed you had a defense because you had been in jail.
>
> He brought all of that stuff to our attention, which is why I took my time and asked you those questions.  I asked you to make sure you were doing this because this is what you wanted to do.
>
> [MR. BAKER]:  And, Your Honor, * * * I'm sorry.  * * * I know I should have spoke up, but like I said, I been in trouble before and I know -- you know, I would not speak to the judge like that.
>
> THE COURT:  But when I'm talking directly to you and I'm asking you those questions --
>
> [MR. BAKER]:  I know.  I'm sorry.
>
> THE COURT:  -- why didn't you answer?
>
> [MR. BAKER]:  I was scared.  I didn't know.
>
> THE COURT:  What are you scared of?
>
> [MR. BAKER]:  I'm sorry.
>
> THE COURT:  That's okay.  Go ahead.
>
> [MR. BAKER]:  The way they were presenting it back there in the room * * *, I didn't want to get no more time that they were trying to already give me for something I didn't do.
>
> So I didn't want to speak up, you know what I mean, and have to get more time because, you know, I pretty much stepped on my own toes or something.
>
> I didn't know what to do.  I was backed into a corner.

According to Mr. Baker, his former attorney told him that he was not allowed to leave while the three-hour plea discussion was occurring. He testified that the officers in the room "interrogated [him] for information," and his former attorney just kept telling him to answer the officers.

{¶16} Mr. Baker's former attorney also testified at the hearing on Mr. Baker's motion to withdraw his plea. He testified that he has been a practicing attorney for almost 14 years and has practiced criminal defense for the last 12 years. According to Mr. Baker's former attorney, he had numerous discussions with Mr. Baker either in person or over the phone where they talked about the facts of his case, the evidence, and the strengths and weaknesses of any defense they might present at trial. He described Mr. Baker as "amenable to pleading[, but not] excited about it."

{¶17} Mr. Baker's former attorney admitted that he called Mr. Baker to the courthouse that Friday afternoon to discuss the possibility of a plea. He testified, however, that he spoke privately with Mr. Baker before the plea discussion started and explained to him the possible advantages and disadvantages of cooperating with the State. He acknowledged that Mr. Baker was not inclined to meet with the State, but said that he encouraged him to do so because of the nature of the evidence against him and the amount of time he could potentially receive if convicted. He testified that Mr. Baker then decided to have the meeting. He denied ever forcing Mr. Baker to engage in the meeting and agreed that Mr. Baker could have left the meeting or stopped to consult with him at any time. He recalled that he and Mr. Baker did, in fact, step out and discuss things "at least once if not more times."

{¶18} Mr. Baker's former attorney described the plea discussion as frank, but not coercive or pressured. He testified that the plea the State was offering guaranteed Mr. Baker less than the mandatory minimum sentence he would receive if he lost. He further testified that,

given Mr. Baker's criminal history, he did not expect that Mr. Baker would receive the minimum sentence on his counts if convicted. He stated that he was concerned about his ability to prevail on Mr. Baker's defense at trial, but that he was prepared to go forward. He stated that he never told Mr. Baker that trial was not an option and that, had Mr. Baker still wanted to go to trial, he would have defended him.

{¶19} Mr. Baker's former attorney denied that anyone ever threatened Mr. Baker during the meeting on the plea offer. He admitted that the State's offer was time sensitive because the trial was scheduled to go forward that Monday. Further, he admitted telling Mr. Baker that he would likely receive a sentence of 7-10 years if he went to trial and lost. He testified that the evidence against Mr. Baker remained consistent throughout discovery, except that Mr. Baker's co-defendant then decided to testify for the State. He explained that the threat of the co-defendant's testimony was a factor in his decision to recommend a plea to Mr. Baker, but that there were other factors as well. He confirmed that he had previously discussed with Mr. Baker his concerns about prevailing, should the matter go to trial. He testified that, ultimately, he told Mr. Baker that he would take whichever course of action Mr. Baker decided upon. He stated that he simply "gave [Mr. Baker] [his] best analysis of the case."

{¶20} Officer David Christopher Crockett also testified at the hearing on Mr. Baker's motion to withdraw his plea. Officer Crocket testified that he was present at Mr. Baker's residence on May 3, 2014, when the police decided to knock on the door and investigate. He testified that the police detected a chemical smell when someone answered the door, so they came inside and searched the residence. Once inside, they discovered a methamphetamine lab in the portion of the house where Mr. Baker resided. Officer Crockett stated that, based on his experience with the one-pot method, he could estimate how recently someone had used a

particular pot to produce methamphetamine. He testified that he observed numerous pots in the residence, some of which were very new and some of which appeared to be several weeks old. Officer Crockett testified that, when he spoke with Mr. Baker later that same day, Mr. Baker admitted that he had cooked methamphetamine at his home. Although Mr. Baker claimed that his statement to Officer Crockett was the result of coercion, Officer Crockett denied that he ever threatened Mr. Baker or threatened to arrest his parents if he refused to claim ownership of the methamphetamine.

{¶21} Officer Crockett testified that he also was present when Mr. Baker came to the courthouse to discuss the possibility of a plea. He testified that everyone at the meeting discussed the matter calmly and cordially and no one ever threatened Mr. Baker. He stated that Mr. Baker's former attorney was present the entire time and Mr. Baker was free to either consult with him or leave at any point. Officer Crockett denied that he, his fellow officer, or the prosecutor ever issued Mr. Baker an ultimatum or threatened to seek a higher penalty if he took the matter to trial.

{¶22} The trial court determined that Mr. Baker was not entitled to withdraw his plea because the evidence showed that he simply had a change of heart once the sentencing date was upon him. The court noted that Mr. Baker's and his former attorney's testimony conflicted in several respects and found the former attorney to be the more credible witness. Although Mr. Baker professed his innocence due to his alibi, the court noted that the evidence showed that his home contained several methamphetamine labs, some of which were several weeks old. The court further noted that the State had evidence that Mr. Baker confessed to producing methamphetamine. The court found that Mr. Baker's former attorney had kept him apprised of the evidence leading up to the plea discussion. It also found that, on the day of the plea

discussion, Mr. Baker's former attorney simply explained to him that the plea would ensure a more lenient sentence than he could expect if he were to be convicted at trial. The trial court determined that Mr. Baker's former attorney acted as competent counsel and that Mr. Baker received a full plea hearing and a full evidentiary hearing on his motion to withdraw. Consequently, the court denied Mr. Baker's motion.

{¶23} Having reviewed the record, we cannot conclude that the trial court abused its discretion when it denied Mr. Baker's presentence motion to withdraw his plea. Mr. Baker failed to show that he was not represented by competent counsel. His former attorney testified that he kept Mr. Baker apprised of all the evidence leading up to trial, that he consulted with him both before the plea discussion began and amidst the discussion, and that he presented Mr. Baker with his options in a clear manner and recommended the better course of action. He further testified that, before that date, he had expressed to Mr. Baker his concerns about prevailing at trial. Although his testimony conflicted with Mr. Baker's in several respects, "the good faith, credibility and weight of the movant's assertions in support of the motion [to withdraw] are matters to be resolved by [the trial] court." *Smith*, 49 Ohio St.2d 261, at paragraph two of the syllabus. The trial court specifically found Mr. Baker's former attorney to be the more credible witness.

{¶24} While Mr. Baker claims that his alibi would have established his innocence, it would not have refuted Officer Crockett's testimony that his residence contained multiple pots of methamphetamine, some of which were several weeks old. Mr. Baker failed to offer any explanation for those older items. Further, there was evidence that he confessed to having manufactured methamphetamine. Although Mr. Baker faults his former attorney for not seeking the suppression of his purportedly coerced confession, Officer Crockett specifically denied that

he threatened Mr. Baker to induce his confession. Accordingly, Mr. Baker has not shown either that he possessed evidence in support of his claim of innocence or that his former attorney was ineffective for failing to file a motion to suppress. *See Robertson*, 2011-Ohio-4300, at ¶ 9 (claim of innocence insufficient to warrant plea withdrawal, absent evidence to support the claim); *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 20 ("[T]he decision of whether or not to file a motion to suppress is a trial strategy.").

{¶25} Mr. Baker bore the burden of demonstrating that he had a "reasonable and legitimate basis for withdrawing [his] plea." (Internal quotations and citation omitted.) *Jones*, 2012-Ohio-6150, at ¶ 37. The trial court's determination that he failed to meet his burden is not unreasonable, arbitrary, or unconscionable. *See State v. Watson*, 9th Dist. Summit No. 25401, 2011-Ohio-4227, ¶ 13-14. Because no transcript of Mr. Baker's plea hearing exists, we must presume regularity in that proceeding. *See Doskocil*, 2013-Ohio-2074, at ¶ 16. Further, the record reflects that the court conducted a full evidentiary hearing on Mr. Baker's motion to withdraw and considered his arguments in support of his motion. *See Robertson*, 2011-Ohio-4300, at ¶ 6. Finally, Mr. Baker failed to demonstrate that he received ineffective assistance of counsel at any point before he discharged his former attorney because there is no evidence that his former attorney's performance was deficient. *See Xie*, 62 Ohio St.3d at 524. The record supports the trial court's conclusion that Mr. Baker simply had a change of heart regarding his plea. *See State v. Brown*, 9th Dist. Summit No. 23759, 2007-Ohio-7028, ¶ 23 ("A mere 'change of heart' does not constitute a legitimate basis for the withdrawal of a guilty plea."). Consequently, the trial court did not abuse its discretion by denying his motion. Mr. Baker's sole assignment of error is overruled.

III.

**{¶26}** Mr. Baker's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.