[Cite as *State v. Hendon*, 2018-Ohio-1284.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

ERIC D. HENDON

    Appellant

C.A. No.     28284

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 2014-01-0120 (A)

DECISION AND JOURNAL ENTRY

Dated: April 4, 2018

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant Eric D. Hendon appeals from his conviction in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} On December 31, 2013, an incident occurred involving a robbery at a house located at 329 Seventh Street in Barberton, Ohio. During the robbery, three of the occupants of the house, J.K., D.C.K., and A.K., were fatally wounded. A fourth occupant of the house, R.B., was shot and stabbed but survived her injuries. Following the incident, R.B. placed a 911 call at 6:48 p.m.

{¶3} On or about January 1, 2014, Oriana House employee, Deanna Brutto, learned of the incident that occurred at 329 Seventh Street. Pursuant to her role as program manager for electronic monitoring, she entered the address into the tracking system, and "ran points" for a thousand foot radius around the address, and a thirty minute time period prior to the 9-1-1 call

that alerted to the incident. Ms. Brutto discovered that a GPS monitoring device assigned to an individual under supervision for postrelease control had been in the immediate vicinity just prior to the 9-1-1 call. After determining that the GPS monitoring device was assigned to Hendon, Ms. Brutto conveyed this information to Officer Todd Liggett of the Northern Ohio Violent Fugitive Task Force, to identify Hendon as a person of interest related to the incident.

{¶4} On January 2, 2014, Officer Liggett received a "request[] to arrest Eric Hendon[.]" Officer Liggett utilized the GPS system to determine Hendon's location and then proceeded to execute the arrest along with Barberton police and other officers. Hendon was taken into custody in connection with the incident on January 2, 2014.

{¶5} On January 22, 2014, the Summit County Grand Jury returned a fourteen-count capital indictment charging Hendon with the following: one count of aggravated murder of J.K., two counts of aggravated murder of D.C.K., two counts of aggravated murder of A.K., attempted murder of R.B., four counts of aggravated robbery, two counts of felonious assault, and one count of having weapons while under disability. Numerous specifications were attached to these charges. Hendon was arraigned on February 4, 2014, and pleaded not guilty to all counts of the indictment.

{¶6} A jury was empaneled and the matter proceeded to trial on March 17, 2016. The jury returned a verdict on April 7, 2016, finding Hendon guilty on all counts. After the mitigation phase of the trial, the jury recommended a sentence of life in prison without parole as to the aggravated murder charges. The trial court made its additional findings as to certain specifications, and found Hendon guilty on the charge of having weapons under disability. Hendon was sentenced according to law.

{¶7} Hendon appeals the May 17, 2016 judgment entry of conviction and presents three assignments of error for our review. For ease of analysis we elect to address the assignments out of order.

## II.

### Assignment of Error II

**Admission of testimony and exhibits concerning [Hendon]'s December 31, 2013, GPS tracking data violated [Hendon]'s Fourth Amendment rights and constituted plain error, requiring the reversal of his convictions. Fourth Amendment, United States Constitution; Article I, Section 14, Ohio Constitution. (Citations to the record omitted.)**

{¶8} Hendon argues that "the unchallenged Fourth-Amendment violations that occurred at trial" resulted in the admission of GPS tracking data. Specifically, he contends that the admission of such evidence constitutes plain error because the postrelease control from his prior case "was void ab initio[.]" Further, Hendon contends that his "GPS monitoring was in place only to enforce a curfew requirement, not track his movements at all times." We disagree.

{¶9} Hendon acknowledges that because the alleged error was not objected to at trial, this Court reviews only for plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B). Hendon bears the burden to establish plain error on the record. *State v. Thomas*, __ Ohio St.3d __, 2017-Ohio-8011, ¶ 32. This burden requires Hendon to demonstrate each of the following:

> First, there must be an error, i.e., a deviation from the legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights" [and] affected the outcome of the trial.

*State v. Consilio*, 9th Dist. Summit No. 28409, 2017-Ohio-7913, ¶ 7, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). There is a discretionary aspect of Crim.R. 52(B), and reviewing courts should take notice of plain error "with the utmost caution, under exceptional circumstances and

only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St. 2d 91 (1978), paragraph three of the syllabus.

## A. "Voidness" of Postrelease Control

{¶10} Hendon claims that he was wrongfully subjected to postrelease control based on a deficient sentencing entry in a prior case. Therefore, Hendon argues, he should never have been subjected to supervision and GPS monitoring. Based on the allegedly unlawful imposition of GPS supervision, Hendon contends that "the trial court should have barred the evidence related to the GPS tracking data as a violation of [his] Fourth Amendment rights[.]"

{¶11} Hendon's argument is predicated upon language contained in the sentencing entry from his previous conviction in *State v. Eric D. Hendon*, Summit C.P. No. CR-2000-07-1675 (Dec. 26, 2000). This Dec. 26, 2000 sentencing entry is part of the record in the current matter because it was admitted into evidence as State's Exhibit 330 based only on its relevance to Hendon's charge for having weapons while under disability. Nevertheless, Hendon argues that it was incumbent upon the trial court to undertake a review of that sentencing entry for the entirely unrelated purpose of making an unsolicited determination as to the validity of Hendon's postrelease control, then conclude based solely on the language of the sentencing entry that his postrelease control sentence was void and his GPS supervision unlawful, and consequently exclude any evidence related directly or indirectly to that GPS data.

{¶12} It is true that "[w]hen a judge fails to impose statutorily mandated [postrelease] control as part of a defendant's sentence, that part of the sentence is void and must be set aside." *State v. Keyes*, 9th Dist. Lorain No. 14CA010561, 2015-Ohio-1757, ¶ 10, quoting *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 26. Significantly, Hendon does not claim that there has ever been a determination by any court that his CR-2000-07-1675 postrelease control

sentence is void. Additionally, Hendon has not articulated any legal basis to establish that the trial judge in the current matter had jurisdiction to review and make an initial determination as to the validity of his sentencing entry from a previous and unrelated conviction. Hendon instead asserts that the trial judge in the instant matter "merely would have had to give that document a cursory review to recognize that the postrelease control language therein was insufficient to properly impose postrelease control supervision on [Hendon.]"

{¶13} Our review of the record on appeal leads us to conclude that the trial court could not have simply acknowledged the alleged invalidity of postrelease control based on a single sentencing entry as Hendon suggests. The record of CR-2000-07-1675 was not before the trial court for consideration in the current matter. Trial courts cannot take judicial notice of proceedings in other cases that have come before the court: this is true even if a previous case involved the same parties and the same presiding judge as the current case. *State v. Vaughn*, 9th Dist. Summit No. 27902, 2016-Ohio-7384, ¶ 25, quoting *In re J.C.*, 186 Ohio App.3d 243, 2010-Ohio-637, ¶ 14 (9th Dist.). Likewise, the record of the prior proceedings is not currently before this Court on appeal, and our "review is necessarily limited to the record on appeal." *In re J.C.* at ¶ 15.

{¶14} Even assuming that the language of the sentencing entry[1] failed to properly impose postrelease control, it would not have been possible for the trial court to determine the validity of Hendon's sentence without review of the relevant proceedings in CR-2000-07-1675.

---

[1] We note that Hendon's argument relies heavily on the Supreme Court of Ohio decision in *State v. Grimes,* 151 Ohio St.3d 19, 2017-Ohio-2927, which the Supreme Court did not issue until May 24, 2017—well *after* the entry of Hendon's conviction on May 17, 2016. In *Grimes* the Court "decided whether—and if so, how—notice of the consequences of violating a condition of postrelease control must also be incorporated into the sentencing entry." (Internal citation omitted.) *Grimes* at ¶ 11.

The single journal entry informs only of his conviction and sentence. It does not, however, indicate whether any subsequent proceedings occurred in that case with respect to sentencing or whether any other relevant entries were made in Hendon's previous case. Therefore, it would have been procedurally impermissible for the trial court to have determined the validity of Hendon's post release control by "considering and relying on information gleaned from a [sentencing entry in a] separate case[.]" *Vaughn* at ¶ 25. Accordingly, the trial court could not have concluded that Hendon's postrelease control sentence was void. Thus, we conclude that Hendon has not established an error, let alone a plain and obvious error, amounting to a Fourth Amendment violation or deviation from any legal rule.

## B. GPS Monitoring Beyond Curfew Restrictions

{¶15} Hendon also claims that, because the purpose of Hendon's GPS supervision was to enforce his curfew restrictions, his GPS monitoring should have been limited to that purpose. Hendon argues that he was not subject to daytime monitoring as a sanction for postrelease control. He contends, therefore, the trial court should have recognized this alleged limitation on his monitoring and blocked GPS data and the evidence derived from any non-curfew monitoring. Presumably, Hendon raises this argument based on the fact that the underlying incident occurred during a non-curfew timeframe.

{¶16} In support of this argument Hendon cites to the electronic monitoring referral sheet (State's Exhibit 331), which he claims "explicitly states that the sole purpose of [Hendon]'s GPS monitoring was to ensure that he was home during curfew hours." The document, however, does not support this claim. Hendon also avers that "trial testimony confirmed that there were no limitations on his whereabouts at other times, as long as he remained in Ohio" thereby acknowledging that his postrelease control included a geographic restriction to remain in the

state. This Court's own review of the evidence of record and trial testimony shows that Hendon was referred to Oriana House for "active GPS" monitoring with a curfew restriction imposed.

{¶17} Tracy Koach, an electronic monitoring technician at Oriana House, testified at trial that she processed the intake of Hendon on December 23, 2013. She testified that this intake process involved going through a checklist, showing a video to the client, reviewing all of the procedures of the intake packet with the client, addressing the rules of the program, and explaining how the equipment works. Ms. Koach physically placed the GPS device—an ankle bracelet—on Hendon's leg, activated the device, and confirmed that it was in proper working order. She testified that she explained to Hendon how the two-piece tracking device works, and that the equipment must be together and on the client at all times so that they can communicate with the client.

{¶18} Ms. Koach explained that Hendon was restricted to a curfew: to reside nightly at a particular location from 10:00 p.m. until 6:00 a.m. She further explained that Hendon was placed on "active GPS" which means that those with computer access to the monitoring program can "actively see his GPS points all the time" and that they "can pull him up in [their] system and [they] can track him at all given times. Both the curfew restrictions and the active GPS status are indicated on the electronic monitoring referral sheet.

{¶19} The record does not support Hendon's argument that his active GPS monitoring was limited to the sole purpose of ensuring his compliance with curfew and, therefore, restricted to gathering data for that purpose. Furthermore, in addition to Hendon's curfew restrictions, other conditions and restrictions of postrelease control—including the geographic restriction to remain in Ohio—do apply. *See* R.C. 2967.131(A) ("[I]n addition to any other sanctions of [postrelease] control of a felon imposed under [R.C. 2967.28], the authority * * * shall include as

conditions of the [postrelease] control the conditions that the individual or felon not leave the state without permission * * * and that the individual or felon abide by the law during the period * * * [postrelease control.]"). Thus, we conclude that Hendon has not established that his GPS monitoring during any non-curfew time frame was contrary to any rule of law.

{¶20} This Court concludes that Hendon has not demonstrated any cognizable error based on the admission of evidence stemming from his GPS monitoring and has not established plain error on this basis. Therefore, Hendon's second assignment of error is overruled.

### Assignment of Error I

**[Hendon]'s trial counsel rendered ineffective assistance of counsel in violation of his constitutional rights. Sixth and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution. (Citations to the record omitted.)**

{¶21} In his first assignment of error, Hendon claims that his trial counsel rendered ineffective assistance of counsel. He presents two issues for our review. First, Hendon contends that trial counsel were ineffective for failing to file a motion to suppress evidence obtained directly and indirectly through the warrantless use of GPS tracking data pertaining to Hendon, while he was not lawfully under postrelease control supervision. Second, Hendon argues that trial counsel were ineffective for failing to file a motion to suppress the GPS tracking data obtained during a non-curfew time frame when he should not have been subjected to GPS tracking.

### A. Suppression of Evidence

{¶22} The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See also* Article I, Section 14 of the Ohio Constitution. The Fourth Amendment itself "contains no provision expressly precluding the use of evidence obtained in

violation of its commands[.]" *United States v. Leon*, 468 U.S. 897, 906 (1984). "Instead, the exclusionary rule is 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶ 24, quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974). Thus, where an individual's Fourth Amendment rights have been violated, "[t]he issue therefore becomes whether suppression of the evidence in this case will create a sufficient deterrent effect to prevent future violations." *Id*. at ¶ 26.

## B. <u>Ineffective Assistance of Counsel</u>

{¶23} To establish ineffective assistance of counsel, Hendon must demonstrate (1) that counsel's performance was deficient, in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that counsel's deficient performance prejudiced the defense and deprived a defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

{¶24} The "[f]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel." *State v. Madrigal,* 87 Ohio St.3d 378, 389 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "To establish ineffective assistance of counsel for failure to

file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65. "In addition, deficient performance cannot be demonstrated where the record fails to disclose the circumstances surrounding the alleged Fourth Amendment violation." *State v. Kendall*, 9th Dist. Summit No. 25721, 2012-Ohio-1172, ¶ 7. Moreover, in order to demonstrate that a failure to pursue the motion to suppress was prejudicial, the defendant must show not only "that there is a reasonable probability that the motion would have been granted," but "also a reasonable probability that, without the excluded evidence, the defendant would have been acquitted." *Consilio*, 2017-Ohio-7913, ¶ 13, quoting *State v. Rucker*, 9th Dist. Summit No. 25081, 2010-Ohio-3005, ¶ 46, *Madrigal*, 389.

### C. **Deficient Performance**

{¶25} Hendon claims that his trial counsels' performance was deficient because they did not move to suppress evidence obtained directly and indirectly through the warrantless use of GPS tracking data when Hendon was (1) not lawfully under postrelease control supervision, and (2) not subject to GPS tracking during a non-curfew timeframe. As we concluded above in the second assignment of error, there is no merit to Hendon's claim that he was not subject to GPS tracking during any non-curfew times. Accordingly, the collection of any GPS data during a non-curfew timeframe does not serve as a basis to suppress evidence of, or stemming from, the GPS data. Therefore, Hendon has not demonstrated that trial counsel were deficient for failing to file a motion to suppress on that basis.

{¶26} Next, we turn to Hendon's claim that his trial counsel should have moved to suppress evidence of, and derived from, GPS data because he was not lawfully subject to GPS monitoring. Hendon's suppression argument is premised entirely on his claim that his

postrelease control sentence from a previous conviction was void. As we addressed above, Hendon avers that he was on GPS monitoring based on an improperly imposed postrelease control sentence from his conviction in CR-2000-07-1675.

{¶27} Emphasizing the fact that Hendon never directly appealed or otherwise challenged the validity of his sentencing entry from CR-2000-07-1675, the State contends that, in the current case, a collateral attack of his postrelease control by way of a motion to suppress is procedurally improper. Additionally, the State maintains that postrelease control notification is presumed to have been properly given at the sentencing hearing, the transcript of which is not part of the record in this appeal. The State argues that Hendon's sentence is not void, and that Hendon has suffered no prejudice from the sentencing entry that properly informed him of the five year period of postrelease control.

{¶28} In the previous assignment of error, we rejected Hendon's argument that the trial court, in this matter, could have determined that his sentence in the previous conviction was void based simply upon a review of the language of the December 26, 2000 sentencing entry. We conclude that Hendon has not demonstrated that his postrelease control sentence was void and, therefore, Hendon has not met his burden to prove a basis to suppress evidence or to establish any Fourth Amendment violation. *See Brown*, 2007-Ohio-4837 at ¶ 65; *Kendall*, 2012-Ohio-1172 at ¶ 7. Because this Court concludes that Hendon has not demonstrated that trial counsel were deficient for failing to move for suppression of the GPS evidence on the grounds raised by Hendon in this appeal, we need not address the issue of prejudice. *See State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10. (This Court "need not address both prongs of the *Strickland* test should it find that [Hendon] failed to prove either.")

{¶29} Hendon has not established ineffective assistance of counsel. Accordingly, his first assignment of error is overruled.

### Assignment of Error III

**The trial court abused its discretion when it denied [Hendon]'s motion *in limine* concerning the State's use at trial of the GPS tracking data from the 3M system used by Oriana House. Fifth and Fourteenth Amendments to the United States Constitution; Article I, Sections 10 and 16, of the Ohio Constitution; Evid.R. 702; *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). (Citations to the record omitted.)**

{¶30} In his third assignment of error, Hendon contends that the trial court erred by denying his motion in limine. Hendon's Motion PPP, filed September 14, 2015, is captioned "Motion in Limine to Exclude Testimony of Andrew Menichino[.]" Hendon argues that the trial court's February 10, 2016 order "RE: Daubert Motion PPP" denied this motion in limine while ignoring evidence of "profound reliability issues" with 3M GPS presented at a pretrial hearing. He argues that "the trial court abuse[d] its discretion when its ruling wholly ignored evidence developed at the hearing that the 3M GPS tracking system had been found to be unreliable in another jurisdiction."

{¶31} A motion in limine presents "'a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury.'" *State v. Echard*, 9th Dist. Summit No. 24643, 2009-Ohio-6616, ¶ 3, quoting *State v. Grubb*, 28 Ohio St.3d 199, 201 (1986). "This Court is not required to decide whether a trial court's order granting or denying a motion in limine is proper if the claimed error is not preserved by objection, proffer, or ruling on the record at the pertinent part during the trial." *State v. Dasen*, 9th Dist. Summit No. 28172, 2017-Ohio-5556, ¶ 49.

**{¶32}**  The admissibility of expert testimony is governed by Evid.R. 702.  *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 610 (1998).  The rule provides that "[a] witness may testify as an expert if all of the following apply:"

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Evid.R. 702.  In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), "the United States Supreme Court discussed the question of when expert scientific testimony is relevant and reliable."  *Miller*, 80 Ohio St.3d at 611.

**{¶33}**  In his merit brief, Hendon makes reference to the trial testimony of the State's witness, 3M employee Chris Defant, regarding the GPS tracking used by Oriana House and asserts that "Mr. Defant's trial testimony failed to meet the reliability requirements of Evid.R. 702 and *Daubert*."  However, Hendon does not explain the relevance of Mr. Defant's trial testimony to Hendon's argument that the trial court erred by denying his motion in limine. Hendon then shifts his argument to the pretrial motion in limine, motion PPP, wherein Hendon

moved the trial court to exclude any evidence of testimony regarding Andrew Menichino—not Mr. Defant—as an expert in GPS analysis.

{¶34} The memorandum in support of motion PPP contained legal citations, but lacked any substance or factual basis for challenging Mr. Menichino's proposed testimony or the reliability of the 3M GPS technology. The trial court held a hearing where the State moved to strike the motion as moot because Mr. Menichino would not be called as an expert at trial. Confusingly, trial counsel conceded that the motion was "moot as to Mr. Menichino" but insisted there was "still [] a *Daubert* issue, a 702 issue regarding the GPS technology in this particular case" and purported to withdraw the moot portion of that motion. The record is not clear as to exactly what remained of that motion, except that the trial court sought clarification from Hendon's counsel that the "*Daubert* motion" did not have to do with the qualifications of Mr. Menichino as an expert witness, or anything relating to Mr. Defant.

{¶35} Trial counsel confirmed on the record that the defense had reviewed the report and the CV of Mr. Defant and they had "no issue with Mr. Defant as an expert witness in the field of GPS or any of his qualifications" and *they would not challenge* "his ability to be an expert witness[.]" Nevertheless, the parties proceeded to call witnesses to address an issue of GPS tracking reliability. In its order ruling on the motion, the trial court concluded:

> After analyzing all briefs, listening to the testimony and arguments, reviewing the exhibits admitted during the hearing, reviewing the transcript from the hearing and all other relevant information, this [c]ourt finds that the GPS technology offered by the State of Ohio is reliable and admissible.

The trial court stated "[f]urther, there is no precedent to support [Hendon]'s assertion that the commonly accepted GPS technology utilized in this case was unreliable."

{¶36} We conclude that Hendon's argument lacks specificity and clarity as to the legal and factual basis for challenging the trial court's ruling on motion PPP, the testimony of Mr.

Defant, or the admission of GPS data. It is unclear whether Hendon intended to argue that an expert was not qualified to testify pursuant to Evid.R. 702 and, if so, which testimony Hendon believes should have been excluded. Alternatively, if Hendon sought only to challenge the reliability of the 3M GPS system, Hendon has not made evident the factual or legal basis upon which he claims to have moved the trial court for such a ruling, nor has he explained the relevance of Evid.R. 702 or *Daubert* to such an evidentiary challenge. Furthermore, regardless of the basis for the motion in limine, Hendon has not directed this Court to any part of the record were he objected at trial or sought to exclude the testimony of Mr. Defant. Hendon has not demonstrated any basis in law or fact that would permit this Court to determine that the trial court abused its discretion by overruling his motion and declining to exclude evidence of GPS tracking data on the basis of Evid.R. 702.

{¶37} Hendon's third assignment of error is overruled.

III.

{¶38} Hendon's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


_____
JULIE A. SCHAFER
FOR THE COURT



TEODOSIO, J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

CRAIG M. JAQUITH, Assistant State Public Defender, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.