[Cite as *State v. Dennison*, 2020-Ohio-2699.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

TYRONE DENNISON

    Appellant

C.A. No.     29354

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2016-09-3000

DECISION AND JOURNAL ENTRY

Dated: April 29, 2020

TEODOSIO, Judge.

{¶1}	Tyrone Dennison appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands the matter for further proceedings consistent with this decision.

I.

{¶2}	There is no dispute that Mr. Dennison has a history of mental illness. This includes diagnoses of schizophrenia and antisocial personality disorder. Indeed, the facts underlying this appeal involve allegations of sexual abuse that occurred between Mr. Dennison and fellow patients at Northcoast Behavioral Health Center. Specifically, a grand jury indicted Mr. Dennison on one count of rape in violation of R.C. 2907.02(A)(2), one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), and one count of abduction in violation of R.C. 2905.02(A)(2), with an accompanying sexual-motivation specification.

{¶3}   Mr. Dennison pleaded not guilty by reason of insanity.  As a result, the trial court referred Mr. Dennison to the Criminal Court Psycho-Diagnostic Clinic for competency and sanity evaluations.  Mr. Dennison's counsel and the State stipulated to the results of the reports generated from those evaluations (dated December 13, 2016 and January 23, 2017, respectively), which indicated that Mr. Dennison was competent to stand trial, and that – while he was suffering from a severe mental disease at the time of the alleged offenses – he knew the wrongfulness of his actions at the time he committed the alleged offenses.  The trial court then set the matter for trial.

{¶4}   On the morning of trial, Mr. Dennison's counsel indicated that Mr. Dennison wanted to avail himself of the State's plea offer and plead guilty.  He expressed concerns, however, regarding Mr. Dennison's mental health, and informed the court that Mr. Dennison recently told him that he had been hearing voices.  Mr. Dennison's counsel indicated that Mr. Dennison's medications "might be out of whack[,]" and questioned whether Mr. Dennison could knowingly, intelligently, and voluntarily plead guilty.  The trial court then spoke with Mr. Dennison, who confirmed that he was hearing voices, and also indicated that the victim was "in the form of the devil."  After further inquiry, the trial court determined that it would not accept Mr. Dennison's plea, and that it needed time to consider the best approach going forward.  It, therefore, scheduled a status hearing for the next week.  At that hearing, Mr. Dennison's counsel indicated that medical professionals were in the process of determining whether Mr. Dennison's medication needed adjustment and agreed to a continuance.

{¶5}   Following that hearing, Mr. Dennison underwent another competency evaluation.  The State and defense counsel stipulated to the results of the report generated from that evaluation (dated June 27, 2017), which noted that Mr. Dennison had not been compliant with his medications and concluded that Mr. Dennison was not competent to stand trial.  The report further concluded

that there was a substantial probability that Mr. Dennison would become competent to stand trial if he received his medications and underwent a course of treatment to address his mental-health issues. Consistent with that report, the trial court ordered Mr. Dennison to undergo restoration at Twin Valley Behavioral Healthcare Hospital in Columbus.

{¶6} Eight months later, the trial court held a status conference wherein Mr. Dennison's defense counsel and the State stipulated that Mr. Dennison was still not competent to stand trial, and the trial court ordered Mr. Dennison to continue restoration for six months. Mr. Dennison was later deemed restored,[1] which Mr. Dennison's counsel disputed. Mr. Dennison's counsel requested another competency evaluation, which the trial court granted. The results of that evaluation (report dated December 13, 2018) indicated that Mr. Dennison was competent to stand trial. The report noted that Mr. Dennison had been compliant with his medications, but that his "current mental status is highly variable due to the nature of his schizophrenia and his history of non-compliance with medications." Following the issuance of that report, the trial court determined that Mr. Dennison was competent to stand trial. The trial court then set dates for the final pretrial and trial.

{¶7} At the final pretrial, Mr. Dennison's counsel relayed the plea negotiations that had taken place and indicated that Mr. Dennison intended to plead guilty via an *Alford* plea. Mr. Dennison's counsel indicated that he believed Mr. Dennison "understands everything that is going on[,]" and was willing to plead guilty to the counts for rape and abduction in exchange for the State dismissing the count for gross-sexual-imposition with the accompanying sexual-motivation specification. During the course of the trial court's colloquy with Mr. Dennison, he stated that

---

[1] We note that while the appellate briefs reference the fact that Mr. Dennison was deemed restored, there is no report in the appellate record reflecting his restoration.

"the only reason why [he] did that was [he] had to protect [his] kids[,]" and that "[t]he devil made [him] do it for [his] kids." He also indicated two other times that the only reason he did "it" was to protect his kids. It is unclear from the transcript whether Mr. Dennison was referring to committing the acts alleged, or to pleading guilty. Nonetheless, the trial court did not address these comments. Instead, it continued with the plea colloquy and informed Mr. Dennison that he would be given the opportunity to speak when he returned for sentencing. The trial court accepted his plea and set the matter for sentencing.

{¶8} Five days after Mr. Dennison pleaded guilty, his counsel moved to withdraw the plea. In the motion to withdraw, Mr. Dennison's counsel asserted that he met with Mr. Dennison after he pleaded guilty and asked him what he meant when he stated that he did it because of his kids and the devil. According to Mr. Dennison's counsel, Mr. Dennison responded that the devil spoke to him and told him that if he did not enter a plea, the devil would torture and kill his children. Mr. Dennison's counsel concluded that Mr. Dennison was, therefore, not competent to enter a plea, and requested that the plea be withdrawn and Mr. Dennison be evaluated again with specific attention to his auditory hallucinations and delusional thinking.

{¶9} The trial court addressed Mr. Dennison's motion to withdraw two days later at the sentencing hearing. Mr. Dennison's counsel indicated that he filed the motion on his own accord out of an abundance of caution. In addressing the motion, the trial court indicated that – during a plea colloquy – its long-standing practice was to not discuss excuses or mitigating circumstances offered by a defendant as to why an offense was committed. The trial court recalled Mr. Dennison referencing his kids, but did not recall him referencing the devil. The trial court acknowledged that the latter "probably would have caused a little more pause to the Court[.]" It then engaged in a discussion with Mr. Dennison wherein Mr. Dennison clarified that he meant that the devil made

him commit rape, not that the devil made him plead guilty. This surprised Mr. Dennison's counsel, who indicated that Mr. Dennison told him that the devil made him plead guilty. After a lengthy discussion, including a discussion of the various reports regarding Mr. Dennison's sanity and competency, the trial court denied Mr. Dennison's counsel's motion to withdraw the guilty plea.

{¶10} The trial court then addressed the issue of whether the conviction for abduction merged with the conviction for rape. It asked for the State's rendition of the facts, which Mr. Dennison's counsel did not object to. The State relayed those facts as follows:

> The defendant and the victim were both residents at Northcoast Behavioral. The defendant asked the victim for a hug since he was getting transferred to another unit. She was standing at the door, he hugged her tightly, turned her around into the room and shut the door.
>
> Once inside, the defendant tried to kiss the victim, pinning her up against the wall. Victim expressed no, that she didn't want this to happen. He said she told him that he needs to call his wife. She asked to leave the room. And the defendant's demeanor changed. She could see a change in his behavior, specifically his eyes.
>
> As a result, the defendant picked her up around the back her legs, carried her to the bed, put her on the bed, attempted to remove her jeans, turned her on her side so she was facing the door.
>
> She again tried to stop him, and she told him that this was not him; he was not acting like himself, he was acting like a bully.
>
> She kept saying no. He told her that he was not listening to her, that she wanted it. She resisted. He reached to the back of her jeans, pulled them down, put his hands around her neck and told her he would kill her if she didn't stop screaming.
>
> He was in a state of erection at this point that she saw, and he forced himself inside of her, particularly by vaginal penetration.

{¶11} The State argued that separate convictions for rape and abduction were justified under these facts, and Mr. Dennison's counsel argued that the acts were all part and parcel of the same event, that is, the sexual assault. The trial court determined that the offenses were committed separately, distinguishing between when Mr. Dennison moved the victim into the room, closed the

door, and prevented her from leaving, from when Mr. Dennison placed the victim on the bed against her will and sexually assaulted her. It sentenced Mr. Dennison to nine years of imprisonment for rape and one year of imprisonment for abduction, which it ran consecutively for a total of ten years, with credit for time served in the Summit County jail. Mr. Dennison now appeals, raising three assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

TYRONE DENNISON WAS DENIED DUE PROCESS WHEN THE TRIAL COURT TOOK HIS PLEA, WHILE INCOMPETENT, IN VIOLATION OF R.C. 2945.371, THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 2, 9, AND 16 OF THE OHIO CONSTITUTION.

{¶12} In his first assignment of error, Mr. Dennison argues that the trial court committed plain error when it accepted his guilty plea despite the fact that he made comments during his plea colloquy that called into question his competency to enter a plea.

{¶13} The doctrine of plain error requires that there must be: (1) a deviation from a legal rule; (2) that is obvious, and; (3) that affects the appellant's substantial rights. *State v. Hardges,* 9th Dist. Summit No. 24175, 2008-Ohio-5567, ¶ 9. An error affects the appellant's substantial rights if it affected the outcome of the trial. *State v. Barnes,* 94 Ohio St.3d 21, 27 (2002). "There is a discretionary aspect of Crim.R. 52(B), and reviewing courts should take notice of plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Hendon*, 9th Dist. Summit No. 28284, 2018-Ohio-1284, ¶ 9, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶14} "The United States Supreme Court has held that under the Due Process Clause, the standard for determining competency to stand trial is the same as the standard for determining

competency to enter a guilty plea." *State v. Kovacek*, 9th Dist. Lorain No. 00CA007713, 2001 WL 577664, *3 (May 30, 2001), citing *Godinez v. Moran*, 509 U.S. 389, 391 (1993); *see also State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, ¶ 57 ("The competency standard for standing trial is the same as the standard for pleading guilty[.]").  "A defendant is legally incompetent if 'incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense.'" *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶ 114, quoting R.C. 2945.37(G).  "The burden of establishing incompetence * * * is upon the defendant." *State v. Johnson*, 8th Dist. Cuyahoga No. 81601, 2003-Ohio-2303, ¶ 14.

{¶15}  "In reviewing a judge's determination of competency, we examine whether the conclusion was supported by competent, credible evidence." *Id.*  "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity." *State v. Murphy*, 12th Dist. Butler No. CA2006-06-143, 2007-Ohio-4535, ¶ 29, citing *State v. Bock*, 28 Ohio St.3d 108, 110 (1986).  To that end, "[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, ¶ 116, quoting *Bock* at 110.  For example, a defendant suffering from paranoid schizophrenia, believing that he is a "prophet of God," and that "he would not be tried because God would deliver him[,]" can still be competent to stand trial. *Id.* at ¶ 113, 117, 146.

{¶16}  We now turn to the law regarding a trial court's acceptance of a guilty plea.  "A guilty plea that is not knowing, intelligent, and voluntary violates the Ohio and United States Constitutions." *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 40.  "It is the trial court's duty, therefore, to ensure that a defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Id.*, quoting *Boykin v. Alabama,* 395 U.S. 238, 244 (1969).

"To ensure that pleas of guilty * * * are voluntarily, knowingly, and intelligently made, trial courts must accurately advise defendants of the law in Crim.R. 11 plea colloquies." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 41.

{¶17} Mr. Dennison has not challenged the plea colloquy as failing to comply with Crim.R. 11. Instead, he argues that the comments he made during the plea colloquy, that is, that "the only reason why [he] did that was [he] had to protect [his] kids[,]" that "[t]he devil made [him] do it for [his] kids[,]" and indicating two other times that the only reason he did "it" was to protect his kids – regardless of whether he was referencing his guilty plea or the underlying criminal acts – called into question whether he was knowingly, intelligently, and voluntarily pleading guilty. He argues that their very utterance showed that he did not rationally understand the proceedings.

{¶18} In support of his argument, Mr. Dennison points to the fact that, at the sentencing hearing wherein the trial court addressed his motion to withdraw his guilty plea, the trial court did not recall him making statements about the devil during the plea colloquy, yet admitted that such comments "probably would have caused a little more pause to the Court[.]" He asserts that the trial court ignored the fact that the most recent competency evaluation indicated that his mental state was "highly variable[,]" and argues that – because his mental status was questionable – the trial court was obligated to undertake additional inquiry. Additionally, he notes that the record reflects that each time he previously referenced the devil, he was found to be incompetent, or the trial court was otherwise not comfortable taking his plea.

{¶19} In response, the State argues that the trial court was not required to specifically ask Mr. Dennison about his mental state before accepting his plea. It asserts that while Mr. Dennison

is clearly mentally ill, there was no indication at the plea hearing that he was incompetent and, accordingly, no reason for the trial court to sua sponte order a new evaluation, or to deny his plea.

{¶20} This Court's review of the record indicates that, while Mr. Dennison did state that "the only reason why [he] did that was [he] had to protect [his] kids[,]" that "[t]he devil made [him] do it for [his] kids[,]" and indicated two other times that the only reason he did "it" was to protect his kids, the trial court interpreted those statements to refer to the underlying criminal acts, not to his decision to plead guilty. This is supported by the fact that the trial court responded to two of the statements by telling Mr. Dennison that he would have the opportunity to speak before sentencing, and telling him he could write down whatever he wanted to say and read it to her when he came back. Additionally, the trial court specifically asked Mr. Dennison whether he was pleading guilty of his own free will, to which he responded "[y]es[,]" and whether anyone was forcing him to plead guilty, to which he responded "[n]o[.]"

{¶21} To the extent that Mr. Dennison argues that these statements alone called into question his competency to enter a plea, we find his argument under these facts unpersuasive. As previously noted, "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity." *Bock*, 28 Ohio St.3d at 110. "A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.* There was – and continues to be – no dispute that Mr. Dennison is mentally ill. Mental illness, however, does not necessarily equate to incompetency. *State v. Berry*, 72 Ohio St.3d 354 (1995), syllabus. Having reviewed the entire plea colloquy, this Court cannot say that the colloquy reflects that Mr. Dennison was "incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense.'" *Braden*, 2003-Ohio-1325, at ¶ 114, quoting R.C. 2945.37(G). Nor can this Court say that the fact that Mr. Dennison

stated that "[t]he devil made [him] do it for [his] kids[,]" and indicated that the only reason he did "it" was to protect his kids, when viewed in the context of the entire plea colloquy, called into question his competency to plead guilty such that the trial court should have refused to accept his plea and sua sponte ordered a new competency evaluation.

{¶22}   Additionally, we are unpersuaded by Mr. Dennison's reliance on the fact that the trial court later did not recall his statement regarding the devil, or the trial court's statement that it "probably would have caused a little more pause to the Court[.]"  We fail to see how this after-the-fact statement by the trial court is relevant to this Court's review of whether – at the time Mr. Dennison pleaded guilty – it committed plain error by accepting his plea.  To the extent that the trial court's comment in this regard supports his second assignment of error (that is, that the trial court erred by denying his motion to withdraw his guilty plea), this Court will address it in our analysis of that assignment of error.

{¶23}   Despite Mr. Dennison's arguments, this Court cannot say that the trial court committed plain error when it accepted his guilty plea.  A review of the plea colloquy indicates that Mr. Dennison understood the nature and consequences of his guilty plea, and that the trial court complied with Crim.R. 11.  *See Montgomery*, 2016-Ohio-5487, at ¶ 40.  While Mr. Dennison did make comments consistent with his well-documented mental illness, we cannot say that those comments called his competency into question such that the trial court should have refused to accept his plea and instead sua sponte ordered a new competency evaluation.  Mr. Dennison's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

TYRONE DENNISON WAS DENIED DUE PROCESS WHEN THE TRIAL COURT DENIED HIS MOTION TO WITHDRAW PLEA, IN VIOLATION OF CRIM.R. 32.1, THE FIFTH AND FOURTEENTH AMENDMENTS TO THE

UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

{¶24} In his second assignment of error, Mr. Dennison argues that the trial court erred by denying his motion to withdraw his guilty plea.

{¶25} As the Ohio Supreme Court has stated, a "defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph one of the syllabus. Instead, "[t]he defendant bears the burden of demonstrating that he has a 'reasonable and legitimate basis for withdrawing [his] plea.'" (Alteration sic.) *State v. Benson*, 9th Dist. Summit Nos. 28527, 28579, 28578, and 28577, 2017-Ohio-8150, ¶ 8, quoting *State v. Baker*, 9th Dist. Summit No. 27937, 2016-Ohio-8026, ¶ 7. While "a presentence motion to withdraw a guilty plea should be freely and liberally granted[,]" the trial court's decision in that regard is reviewed for an abuse of discretion. *Xie* at 527; *State v. Pippert*, 9th Dist. Lorain No. 14CA010698, 2016-Ohio-1352, ¶ 16. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶26} "This Court has held that a trial court does not abuse its discretion when considering a motion to withdraw a guilty plea if the following elements are present: (1) the defendant is represented by competent counsel; (2) the trial court provides the defendant with a full hearing before entering the guilty plea; and (3) the trial court provides the defendant with a full hearing on the motion to withdraw the guilty plea, where the court considers the defendant's arguments in support of his motion to withdraw the guilty plea." *State v. Pamer*, 9th Dist. Medina No. 04CA0027-M, 2004-Ohio-7190, ¶ 10. As occurred here, a trial court's decision to hear and consider arguments on a defendant's motion to withdraw a guilty plea during a sentencing hearing

can constitute a full hearing. *See, e.g.*, *State v. Dyke*, 9th Dist. Lorain No. 02CA008204, 2003-Ohio-4788, ¶ 14-20.

{¶27} Mr. Dennison has not argued that he was not represented by competent counsel, that the trial court failed to provide him with a full hearing before entering his guilty plea, or that the trial court failed to provide him with a full hearing on his motion to withdraw his guilty plea. Rather, he again points to the fact that he made statements regarding the devil during the plea colloquy, that the trial court did not later recall those statements and acknowledged that they "probably would have caused a little more pause to the Court," and that the other times he referenced the devil he had been deemed incompetent. Additionally, Mr. Dennison again argues that the trial court ignored the fact that the most recent competency evaluation indicated that his mental status was "highly variable," and further argues that the trial court made basic factual mistakes in justifying its decision. Mr. Dennison argues that his incompetence was highlighted at sentencing insofar as he remained confused as to why he could not plead no contest and did not understand why he could not be confined to a mental institution rather than prison. He argues that – regardless of whether his comments during the plea colloquy related to the commission of the underlying offenses or his decision to plead guilty – the trial court should have refused to accept his plea, and instead should have ordered a new competency evaluation. He, therefore, argues that the trial court erred by denying his motion to withdraw his guilty plea.

{¶28} At the sentencing hearing wherein the trial court addressed and heard arguments on Mr. Dennison's motion to withdraw his guilty plea, the trial court noted its long-standing practice of not discussing excuses or mitigating circumstances regarding an offense during a plea colloquy. The trial court, reviewing a draft of the plea colloquy transcript, noted the two times wherein Mr. Dennison said that he did it to protect his kids, but did not recall him referencing the devil. While

the trial court did indicate that such a comment "probably would have caused a little more pause to the Court," it then allowed Mr. Dennison to explain what he meant by that comment. Mr. Dennison explained that the devil made him rape the victim, and clarified that he did not mean that the devil made him plead guilty. The trial court and counsel then discussed the sanity and competency reports in the record. Afterward, the trial court confirmed with Mr. Dennison that he understood the plea he entered, and that his decision to plead guilty was of his own free will and not based upon anyone, including a voice or the devil, telling him to do so.

{¶29} Having reviewed the record, this Court cannot say that Mr. Dennison has established that the trial court abused its discretion when it denied his motion to withdraw his guilty plea. Mr. Dennison's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

TYRONE DENNISON WAS DENIED DUE PROCESS AND EQUAL PROTECTION WHEN THE TRIAL COURT IMPOSED NON-MERGED, CONSECUTIVE SENTENCES, WITH INSUFFICIENT CREDIT [FOR] TIME SERVED, IN VIOLATION OF R.C. 2929.14(C)(4), 2929.19(B)(2)(h)(i), 2941.25, THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

{¶30} In his third assignment of error, Mr. Dennison argues that the trial court erred by: (1) failing to merge his convictions for abduction and rape; (2) failing to make the required findings under R.C. 2929.14(C)(4) in support of consecutive sentences; and (3) failing to give him credit for time served while undergoing competency restoration at Twin Valley Behavioral Healthcare Hospital.

{¶31} In response, the State argues – without any citation to analogous case law – that Mr. Dennison's convictions for abduction and rape did not merge. The State then concedes that the trial court failed to make the required findings under R.C. 2929.14(C)(4), thereby requiring a

remand to the trial court for it to make those findings. Lastly, the State asserts that it conceded below that the time Mr. Dennison spent in restoration counted toward his jail-time credit. It now asserts, however, that the Revised Code is unclear as to whether hospitalization for purposes of competency restoration counts toward a defendant's jail-time credit in felony cases. In his reply brief, Mr. Dennison acknowledges that the Revised Code does not directly address this issue for felony cases, but directs this Court to Ohio Adm.Code 5120-2-04(A) to support his argument that he is entitled to jail-time credit for the time he spent while undergoing court-ordered competency restoration.

{¶32} This Court will first address whether the trial court erred by not merging Mr. Dennison's convictions for abduction and rape. R.C. 2941.25 "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. R.C. 2941.25 states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶33} The Ohio Supreme Court has held that two or more offenses may result in multiple convictions if: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114,

2015-Ohio-995, ¶ 25. The *Ruff* court stressed that this inquiry "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id*. at ¶ 26. It is the defendant's burden to establish that the trial court failed to merge the sentences for allied offenses, and that the defendant is entitled to the protection of R.C. 2941.25. *State v. Dembie*, 9th Dist. Lorain No. 14CA010527, 2015-Ohio-2888, ¶ 8. This Court reviews a trial court's determination of whether a defendant's offenses should merge under R.C. 2941.25 de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1.

{¶34} Here, the trial court determined that the offenses of abduction and rape were committed separately, distinguishing between when Mr. Dennison moved the victim into the room, closed the door, and prevented her from leaving, from when Mr. Dennison placed the victim on the bed against her will and sexually assaulted her. Case law, however, supports the conclusion that, when the abduction of the victim is incidental to the underlying sexual crime, and is undifferentiated by time, place or circumstance, those offenses merge. *See., e.g.*, *State v. Powih*, 12th Dist. Brown No. CA2016-11-023, 2017-Ohio-7208, ¶ 40 (collecting factually similar cases wherein the restraint of the victim was incidental to the underlying sexual crime). Here, the record indicates that Mr. Dennison pulled the victim into his room, shut the door, pinned her against the wall, and tried to kiss her. The victim expressed no and asked to leave the room. Mr. Dennison then picked her up, carried her to the bed, pulled down her jeans, and vaginally penetrated her. Under these facts, we find that Mr. Dennison's restraint of the victim in his bedroom was incidental to his commission of rape. Accordingly, we hold that the trial court erred by determining that the offenses were committed separately and, therefore, were not allied offenses subject to merger. *See Powih* at ¶ 40-43 (holding that the trial court erred by failing to merge the defendant's convictions for abduction and rape when the defendant entered the room the victim was in, "locked the door,

grabbed her arm, spun her around, spanked her clothed buttocks, yanked her pants and underwear down before spanking her bare buttocks, and inserted his fingers into her vagina."); *State v. Patel*, 2d Dist. Greene No. 2010-CA-77, 2011-Ohio-6329, ¶ 88-93 (concluding, in part, that abduction and rape were allied offenses of similar import when the defendant entered the room the victim was in, "locked the door, and proceeded to place a hand down the back of her pants and a finger inside her vagina."); *State v. Hernandez*, 12th Dist. Warren No. CA2010-10-098, 2011-Ohio-3765, ¶ 51-54 (holding, in part, that the trial court erred by failing to merge the defendant's convictions for abduction and rape when the defendant grabbed the victim around the waist, pushed her into his motel room, locked the door, pushed her onto the bed, and then raped her). Accordingly, we remand this matter for resentencing, at which point the State can elect which allied offense it will pursue against Mr. Dennison. *See State v. Washington*, 9th Dist. Lorain Nos. 10CA009767 and 10CA009768, 2011-Ohio-1149, ¶ 22, citing *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2. In light of this holding, Mr. Dennison's argument that the trial court failed to make the required findings under R.C. 2929.14(C)(4) to support the imposition of consecutive sentences is now moot. *See* App.R. 12(A)(1)(c).

{¶35} We now turn to Mr. Dennison's argument that the trial court erred by failing to give him jail-time credit for the time he spent undergoing competency restoration at Twin Valley Behavioral Healthcare Hospital. "We review the trial court's determination as to the amount of jail-time credit to which [a defendant] is entitled under the 'clearly and convincingly' contrary to law standard." *State v. Perkins*, 11th Dist. Lake Nos. 2018-L-084 and 2018-L-098, 2019-Ohio-2288, ¶ 12. R.C. 2967.191 governs jail-time credit, providing, in part, that:

> [t]he department of rehabilitation and correction shall reduce the prison term of a prisoner, as described in division (B) of this section, by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including * * * confinement for

examination to determine the prisoner's competence to stand trial or sanity[.] R.C. 2967.191(A). "The Ohio Administrative Code provides additional details regarding when a prisoner is entitled to jail-time credit and how to calculate a prison term, taking the credit into account." *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, ¶ 9. Ohio Adm.Code 5120-2-04(A) provides that:

> [t]he department of rehabilitation and correction shall reduce the minimum and maximum sentence, where applicable, the definite sentence or the stated prison term of an offender by the total number of days that the offender was confined for any reason arising out of the offense for which he was convicted and sentenced, including * * * confinement for examination to determine his competence to stand trial or sanity[.]

"The Ohio Supreme Court has ruled that 'confinement' is construed as time in an institution or program where one is not free to come and go as they wish." *State v. Lutz*, 8th Dist. Cuyahoga No. 105595, 2017-Ohio-4077, ¶ 11, citing *State v. Napier*, 93 Ohio St.3d 646, 648 (2001). "Thus, when a defendant seeks jail-time credit for time he spent at a facility other than jail, the question is whether his time at that facility was 'sufficiently restrictive to constitute confinement * * *.'" *State v. Stobbs*, 9th Dist. Summit No. 29346, 2020-Ohio-92, ¶ 7, quoting *State v. Rinella*, 9th Dist. Summit No. 28460, 2018-Ohio-1922, ¶ 19. "If sufficiently restrictive, time served in a non-jail facility will be awarded as jail-time credit." *Id.*, citing *State v. Napier* at syllabus; *State v. Snowder*, 87 Ohio St.3d 335, 337 (1999).

{¶36} Here, the trial court ordered Mr. Dennison to undergo competency restoration at Twin Valley Behavioral Healthcare Hospital while his criminal case remained pending. In its order, the trial court indicated that Mr. Dennison "shall not be released or discharged from Twin Valley except as authorized by this order or future order of this Court[,]" and that he was "hereby granted Level 4 movement for medical care only allowing staff of Twin Valley to escort [him] to, during, and from the appropriate medical care facility for medical treatment." In light of those

restrictions, we conclude that the trial court should have included the time Mr. Dennison spent undergoing competency restoration at Twin Valley Behavioral Healthcare Hospital in its calculation of his jail-time credit. *But see Stobbs* at ¶ 12-13 (reversing and remanding the matter for the trial court to consider whether the program at issue was "confinement" and, therefore, whether it counted toward jail-time credit when the record did not evidence the level of restriction placed on the defendant). We, therefore, remand the matter for the trial court to recalculate Mr. Dennison's jail-time credit.

{¶37} In light of the foregoing, Mr. Dennison's third assignment of error is sustained.

III.

{¶38} Mr. Dennison's first and second assignments of error are overruled. Mr. Dennison's third assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this decision.

Judgment affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JEREMY A. VEILLETTE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.